**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

CLARENCE JONES, JR.                        CIVIL ACTION NO. 17-0298

VERSUS                                     JUDGE S. MAURICE HICKS, JR.

CITY OF SHREVEPORT, ET AL.                 MAGISTRATE JUDGE HORNSBY

## MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment filed by Defendants, the City of Shreveport ("the City"), Officer Daniel Meyers ("Officer Meyers"), Officer Jesse Camp ("Officer Camp"), and Chief Alan Crump ("Chief Crump") (collectively "Defendants"). See Record Document 16. Plaintiff, Clarence Jones Jr. ("Jones") opposes the Motion. See Record Document 18. Defendants seek dismissal of all of Jones' claims. For the reasons stated in the instant Memorandum Ruling, Defendants' Motion for Summary Judgment is hereby **GRANTED IN PART AND DENIED IN PART**.

## FACTUAL AND PROCEDURAL BACKGROUND

On February 23, 2016, Shreveport Police Officers were dispatched to a 911 call of "shots fired" in the area of Holly Street and East Olive Street. See Record Document 18-2 at p. 1, ¶ 1. Officer Meyers was one of the officers dispatched to the area. See id. at ¶ 2. Once Officer Meyers arrived in the area, he began circulating the neighborhood in his patrol vehicle looking for suspicious activity. See id. At the same time, Jones was driving in the same area.

Officer Meyers alleges that he began following Jones on Alexander Avenue. See Record Document 18-4 at p. 5, Officer Meyers' Deposition, Exhibit B. However, the evidence shows Officer Meyers did not activate his dash cam until he reached East Olive

Street. <u>See</u> Record Document 16-3, Officer Meyers' Dash Cam at 7:43-8:00, Exhibit A-1. Officer Meyers' dash cam footage begins to play as Jones is turning right on to Centenary Boulevard from East Olive Street. <u>See id.</u> Once on Centenary Boulevard, Officer Meyers increased his speed in an effort to follow Jones more closely. <u>See id.</u> at 8:05-8:23. Soon thereafter, Officer Meyers activated his lights and siren signaling Jones to pull over as they both approached the corner of Centenary Boulevard and East Kings Highway. <u>See id.</u> at 8:25-8:35. Seconds later, Jones stopped his vehicle at the intersection of Centenary Boulevard and East Kings Highway. <u>See id.</u> at 8:38. Once stopped, Officer Meyers requested Jones to "roll your windows down and let me see your hands." <u>Id.</u> at 8:44-8:47. Jones initially complied with this request. <u>See id.</u> at 8:56-9:06. However, as Officer Meyers was approaching the vehicle, Jones drove away. <u>See id.</u> at 8:56-9:06; Record Document 18-4 at p. 8, Officer Meyers' Narrative Supplement, Exhibit C

In response to Jones' action, Officer Meyers ran back to his patrol vehicle and pursued Jones through the Highland neighborhood with his vehicle's lights and sirens activated. <u>See id.</u> at 9:12-12:00. During the pursuit, several other officers responded and attempted to set up a roadblock for Jones' vehicle. <u>See id.</u> at 11:46-11:49. The roadblock consisted of two marked vehicles with their lights activated in an effort to halt Jones. <u>See id.</u> However, Jones drove off the road into the grass in an effort to evade those officers as well as Officer Meyers. <u>See id.</u> This pursuit lasted for several minutes with Jones disregarding traffic signs, speed limits, and officer requests. <u>See id.</u> at 9:12-12:00. The pursuit finally ended when Jones turned into a driveway on East Olive Street and came to a stop. <u>See id.</u> at 11:58.

Without any prompting from the officers, Jones got out of the vehicle with his hands up, and immediately laid face down on the ground, with his hands above his head and away from his body. See id. at 12:05-12:08; Record Document 16-3 at p. 56, Officer Meyers' Deposition, Exhibit E. While Officer Meyers and another unidentified officer cleared the driver's side of the vehicle for any other passengers and weapons, Jones laid still on the ground, not moving. See id. at 12:12-12:30. Officer Camp was simultaneously clearing the passenger side. See Record Document 16-3 at p. 64, Officer Camp's Deposition, Exhibit F. Once the vehicle was cleared, Officer Meyers delivered a knee strike to what appears to be Jones' facial area. See id. at 12:30-12:32. He then delivered three kidney strikes for pain compliance to get Jones' hands behind his back. See id. at 12:34-12:37; Record Document 18-4 at p. 6, Officer Meyers' Deposition, Exhibit B. Officer Meyers states that this was necessary because Jones was not complying with his request to put his hands behind his back.[1] See id., Officer Meyers' Deposition.

Upon the third kidney strike, Officer Camp came around the back end of the vehicle to assist Officer Meyers. See Record Document 16-3, Officer Meyers' Dash Cam at 12:36-12:37. With Officer Camp assisting Officer Meyers in detaining Jones, Officer Meyers delivered three closed fist strikes to the right side of Jones' face due to Jones' alleged noncompliance. See Record Document 18-4 at p. 6, Officer Meyers' Deposition, Exhibit B; Record Document 18-4 at p. 8, Officer Meyers' Narrative Supplement, Exhibit

---

[1] It should be noted that there is no audio evidence available to confirm that Officer Meyers was instructing Jones to put his hands behind his back to confirm or dispel of the allegation that Jones was noncompliant. Officer Meyers testified in his deposition that his Mobile Vision System ("MVS") would typically capture the audio but for whatever reason it did not during this incident. See Record Document 18-4 at p. 6, Officer Meyers' Deposition, Exhibit B.

C. However, the video evidence does not clearly show this taking place nor does it show Jones actively resisting being placed in handcuffs. <u>See</u> Officer Meyers' Dash Cam at 12:32-15:12. Furthermore, Officer Camp, in his deposition, testified that he did not see Officer Meyers strike Jones three to four times in the facial area. <u>See</u> Record Document 16-3 at p. 64, Officer Camp's Deposition, Exhibit F. Once Jones was handcuffed, he was patted down for weapons and Mirandized. <u>See</u> Officer Meyers' Narrative Supplement, Exhibit A-2. Jones was arrested for flight from an officer in violation of La. Rev. Stat. § 14:108.1 and reckless operation of a vehicle in violation of La. Rev. Stat. § 14:99.[2] <u>See</u> <u>id.</u>

Following Jones' arrest, officers called the Shreveport Fire Department ("SFD") to the scene to evaluate Jones due to Jones "complaining of swelling of the eye" before transporting him to the Shreveport City Jail. Record Document 16-3 at p. 22, Shreveport Fire Department Incident Report, Exhibit B. Jones was assessed along with his vital signs and all were within normal ranges. <u>See id.</u> Accordingly, the SFD released Jones to the Shreveport Police Department ("SPD"). <u>See id.</u>

Later on February 23, 2016, Jones was transported by an officer of the SPD to the University Health Emergency Department for treatment. <u>See</u> Record Document 18-4 at p. 12, University Health ER Records, Exhibit E. He was diagnosed with a conjunctival hemorrhage to the right eye, an unspecified injury of the head, and an abrasion of an unspecified part of the head. <u>See id.</u> at p. 20.

Following Jones' arrest, he claims to have suffered extensively from headaches and memory problems. <u>See</u> Record Document 18-4 at p. 24, Jones' Deposition, Exhibit

---

[2] These charges were later dropped.

F. In an effort to determine the cause of these headaches and memory loss, Jones visited Dr. Sun, an assistant professor in the LSU Neurosurgery Department. <u>See</u> Record Document 16-3 at p. 67, Dr. Sun's Deposition, Exhibit G. Dr. Sun had Jones submit to a MRI. <u>See id.</u> at p. 68. Jones was diagnosed by Dr. Sun as having a pineal cyst in his brain, but cautioned that it was a limited diagnosis because he has not taken a piece of the tissue and examined under the microscope to confirm or dispel this limited diagnosis. <u>See id.</u> Furthermore, Dr. Sun testified that he did not know what caused Jones' alleged brain cyst and that he could not under a medical opinion say that the brain cyst was caused by head trauma resulting from Officer Meyers' actions. <u>See id.</u> at p. 70.

On February 21, 2017, Jones filed the present lawsuit pursuant to 42 U.S.C. § 1983 against Defendants alleging federal and state law claims of false arrest, excessive force, failure to intervene, and failure to properly train or supervise. <u>See</u> Record Document 1. Further, Jones alleges state law claims of excessive force, false arrest, false imprisonment, failure to train or supervise, assault, and battery. <u>See id.</u> Defendants now seek summary judgment in their favor on the grounds that: (1) Officer Meyers had reasonable suspicion to initiate a stop of Jones, (2) probable cause existed for his arrest, (3) the amount of force used was not clearly excessive to the need, (4) Officer Meyers and Officer Camp are entitled to qualified immunity, (5) there is no evidence of an official policy or custom to establish municipal liability. <u>See</u> Record Document 16-1 at p. 10. Jones opposes Defendants' Motion for Summary Judgment arguing Officer Meyers' actions were unreasonable, excessive, and without reasonable suspicion and/or probable cause.

**LAW AND ANALYSIS**

### I.      Summary Judgment Standard

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir. 2010). "A genuine [dispute] of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 728. During this stage, courts must look to the substantive law underlying the lawsuit in order to identify "which facts are material." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986)

"Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir. 2004). If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine [dispute] for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir. 2004). A nonmovant cannot meet the burden of proving that a genuine dispute of material fact exists by providing only "some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment

in favor of the nonmovant, then summary judgment should be granted. See <u>Boudreaux v.</u> <u>Swift Transp. Co.</u>, 402 F.3d 536, 540 (5th Cir. 2005).

In reviewing a motion for summary judgment, the court is to view "the facts and inferences to be drawn therefrom in the light most favorable to the non-moving party." <u>Tubos de Acero de Mexico, S.A. v. Am. Int'l Inv. Corp., Inc.</u>, 292 F.3d 471, 478 (5th Cir. 2002); <u>see also</u> <u>Harris v. Serpas</u>, 745 F.3d 767, 771 (5th Cir. 2014). However, when there is video evidence available in the record, the court is not bound to adopt the nonmoving party's version of the facts if it is contradicted by the record, but rather should "review [ ] the facts in the light depicted by the videotape." <u>Scott v. Harris</u>, 550 U.S. 372, 381, 127 S. Ct. 1769, 1776 (2007); <u>see also</u> <u>Carnaby v. City of Houston</u>, 636 F.3d 183, 187 (5th Cir. 2011) ("Although we review evidence in the light most favorable to the nonmoving party, we assign greater weight, even at the summary judgment stage, to the facts evident from video recordings taken at the scene."). Further, the court should not, in the absence of any proof, presume that the nonmoving party could or would prove the necessary facts. See <u>Little</u>, 37 F.3d at 1075.

## II.    Section 1983

Section 1983 provides that any person who, under color of state law, deprives another of "any rights, privileges or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ." <u>Harrington v. Harris</u>, 118 F.3d 359, 365 (5th Cir. 1997) (citing 42 U.S.C. § 1983). Section 1983, however, does not create any substantive rights; it simply provides a remedy for the rights designated therein. See <u>id.</u> at 365. "Thus, an underlying constitutional or statutory violation is a predicate to liability under § 1983." <u>Id.</u> (citation

omitted). "To state a claim under § 1983, a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." Leffall v. Dallas Independent School District, 28 F.3d 521, 525 (5th Cir. 1994). The first inquiry is whether plaintiff has alleged a violation of a constitutional right at all. See id. at 525; Piotrowski v. City of Houston, 51 F.3d 512, 515 (5th Cir. 1995).

Jones alleges that Defendants unlawfully detained and arrested him and in doing so used excessive force. Claims that law enforcement officers made an unlawful detention or arrest are analyzed under the Fourth Amendment. See Brown v. Texas, 443 U.S. 47, 51, 99 S. Ct. 2637, 2640 (1979). Furthermore, claims that law enforcement officers used excessive force are also analyzed under the Fourth Amendment. See Mace v. City of Palestine, 333 F.3d 621, 624 (5th Cir. 2003) (citing Graham v. Connor, 490 U.S. 386, 395, 109 S. Ct. 1865, 1871 (1989)). Therefore, Jones meets the first prong as he has alleged a violation of his 4th Amendment rights.

The second inquiry requires the alleged deprivation to be committed by a person acting under the color of state law. See Leffall, 28 F.3d at 525. As Shreveport Police Officers, Officers Meyers and Camp were acting under the color of state law. Therefore, Jones has meet the second prong to state a claim under Section 1983. Accordingly, Jones has sufficiently stated a claim pursuant to Section 1983. However, Officer Meyers and Camp have raised the defense of qualified immunity. The Court will now discuss the law as it relates to a qualified immunity defense.

### III.     Qualified Immunity

When, as here, plaintiff seeks money damages from government officials in their individual capacities[3] under Section 1983, the affirmative defense of qualified immunity is available to protect defendants "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231, 129 S. Ct. 808, 815 (2009) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982)). The qualified immunity doctrine balances two often conflicting interests — "the need to hold public officials accountable when they exercise power irresponsibly, and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Id.  at 231, 129 S. Ct. 815. As such, "[t]he protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." Id. (citations omitted). In effect, qualified immunity "gives ample room for mistaken judgments by protecting "all but the plainly incompetent or those who knowingly violate the law." Mendenhall v. Riser, 213 F.3d 226, 230 (5th Cir.2000) (citing Malley v. Briggs, 475 U.S. 335, 341, 106 S. Ct.1092, 1096 (1986) (internal quotation marks omitted).

Qualified immunity is technically characterized as an affirmative defense. However, once raised by defendants, it devolves upon plaintiff to negate the defense by showing that the officials' conduct violated clearly established law. See Brumfield v. Hollins, 551 F.3d 322, 326 (5th Cir.2008) (citation omitted). Plaintiff's burden is two-

---

[3] Jones has also asserted claims against Officers Meyers and Camp in their official capacities. The claims against Officers Meyers and Camp in their official capacities will be discussed in the next section.

pronged. See Club Retro LLC v. Hilton, 568 F.3d 181, 194 (5th Cir. 2009) (quoted sources omitted).  First, plaintiff must demonstrate that defendant(s) violated a constitutional right under current law.  See id. at 194. "Second, [plaintiff] must claim that the defendant's actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of." Id. (quoted source and internal quotation marks omitted).  Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." Collier v. Montgomery, 569 F.3d 214, 217 (5th Cir. 2009) (citation omitted).

## IV.    Official Capacity Claims Against Officers Meyers and Camp

Jones has asserted Section 1983 claims against Officers Meyers and Camp in their official and individual capacities. See Record Document 1 at p. 2, ¶ 5. However, Jones cannot obtain relief against these officers in their official capacities for two reasons.

First, because a suit against a public official in his official capacity is simply a suit against the local governmental entity itself, the proper official to sue in his official capacity to impose liability upon a local governmental entity is the official with final policymaking authority for the entity under state or local law.[4] See Burge v. Parish of St. Tammany, 187 F.3d 452, 468–70 (5th Cir. 1999) (citing, inter alia, St. Louis v. Praprotnik, 485 U.S. 112, 123, 108 S. Ct. 915, 924 (1988) (plurality opinion). Under the undisputed facts in the summary judgment record, Officers Meyers and Camp both hold the rank of Officer in the

---

[4] Jones correctly sues Chief Crump, the Chief of the SPD, in his official capacity in order to impose liability on the City. However, Jones also asserts claims against Chief Crump in his individual capacity. Nonetheless, Jones has failed to offer evidence that Chief Crump was in involved in the alleged detention and arrest. Therefore, Jones' claim against Chief Crump in his individual capacity must be **DISMISSED**.

SPD. <u>See</u> Record Document 16-3 at p. 3, ¶ 1, Officer Meyers' Affidavit, Exhibit A; Record Document 16-3 at p. 62, Officer Camp's Deposition, Exhibit F. Therefore, these officers are unquestionably not the final policymaking authorities for the SPD, and as such are not the appropriate officials to sue in their official capacity to impose liability on the City.

Second, municipal entities cannot be held liable under a theory of *respondeat superior*, but rather can only be held liable for an unconstitutional policy or custom that causes the deprivation of the plaintiff's constitutional rights under the framework set forth in <u>Monell v. Dep't of Soc. Servs. of City of New York</u>, 436 U.S. 658, 691, 98 S. Ct. 2018, 2036 (1978). Thus, any claims against these officers, even if they were the correct officers to sue as the final policymaking authorities for the SPD, would be subsumed into Jones' <u>Monell</u> claim against the City, which will be discussed in Section VII, *infra.*

For these two reasons, all of Jones' official capacity claims against Officers Meyers and Camp must be dismissed. Therefore, the Court will only analyze Jones' Section 1983 claims against Officers Meyers and Camp for false arrest, excessive force, and failure to intervene as individual capacity claims. Accordingly, Jones' claims against Officers Meyers and Camp in their official capacities are **DISMISSED**.

## V.    Section 1983 Claims Against Officers Meyers

Jones has asserted Section 1983 claims of false arrest[5] and excessive force against Officer Meyers. Officer Meyers has invoked the affirmative defense of qualified

---

[5] Jones states in his Complaint that his claim against Officer Meyers is for false arrest. However, after examining the arguments, it appears the claim should be one of unjustified detention rather than false arrest. A false arrest claim demands a showing that Officer Meyers lacked probable cause to arrest Jones. <u>See</u> <u>Windham v. Harris Cty., Texas</u>, 875 F.3d 229, 239 (5th Cir. 2017). However, at the outset, Jones argues that Officer Meyers did not have the requisite reasonable suspicion for an investigatory stop. <u>See id.</u> at 239 ("To be justified under the Fourth Amendment, an investigative stop needs only

immigration. The Court will now determine whether Jones has raised a genuine dispute of material fact as to these claims in order to survive summary judgment.

### A.    Unjustified Detention

The parties at the outset contest whether Officer Meyers had reasonable suspicion to conduct an investigatory stop on Jones. Therefore, the Court must conduct a reasonable suspicion analysis rather than a probable cause analysis that is utilized for false arrest claims.

The Supreme Court's decision in <u>Terry v. Ohio</u>, 392 U.S. 1, 88 S. Ct. 1868 (1968) is the seminal case on investigatory stops by law enforcement officers. As set forth in <u>Terry</u>, a law enforcement officer who has a reasonable suspicion that an individual may be involved in criminal activity may briefly stop that individual and take steps to investigate further. <u>See</u> <u>Hiibel v. Sixth Judicial Dist. Court</u>, 542 U.S. 177, 185, 124 S. Ct. 2451, 2458 (2004) (citing <u>INS v. Delgado</u>, 466 U.S. 210, 216, 104 S. Ct. 1758, 1762 (1984)). "An investigative vehicle stop is permissible under <u>Terry</u> only when 'the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot.'" <u>United States v. Jaquez</u>, 421 F.3d 338, 340 (5th Cir. 2005) (quoting <u>United States v. Neufeld–Neufeld</u>, 338 F.3d 374, 378 (5th Cir.2003). "An officer's mere hunch or unparticularized suspicion is not sufficient; rather, a minimal level of objective justification for the stop must be present." <u>Jaquez</u>, 421 F.3d at 341. Thus, the Court must view the present case under the totality of circumstances confronting Officer Meyers, including all

---

reasonable suspicion."). Therefore, the Court will construe Jones' claim as an unjustified detention claim.

information at the time he decided to stop Jones, to make the determination on whether Officer Meyers had the requisite reasonable suspicion to stop Jones. <u>See id.</u> at 341.

While the Fifth Circuit's decision in <u>Jaquez</u> is in the context of a motion to suppress in a criminal matter rather than a Section 1983 analysis in a civil matter, this Court finds the <u>Jaquez</u> decision to be instructive because the same legal principles apply. In <u>Jaquez</u>, the Fifth Circuit was tasked with determining whether an officer had reasonable suspicion to perform a <u>Terry</u> stop. <u>See id.</u> at 341. The <u>Jaquez</u> court determined that "[e]xcept for the [vehicle's] color, the officer did not have any particular information about the vehicle, such as its make or model, or any description of the occupant(s)." <u>Id.</u> at 341. Therefore, the Fifth Circuit held that the "sparse and broadly generic information provided by the dispatcher, without more, was insufficient to support a determination of reasonable suspicion, as required under <u>Terry</u>." <u>Id.</u>

In this case, Defendants argue that the "shots fired" 911 call, in the general area of Jones' vehicle, provided Officer Meyers constitutional protection in stopping Jones. Furthermore, Defendants argue that because Jones allegedly stopped at a stop sign for more than a few seconds and had no specific direction of travel that reasonable suspicion was present to stop Jones.[6] Jones contends that it was unreasonable for Officer Meyers to pull him over simply because he believed Jones had stopped for a few seconds too long at a stop sign and he did not understand Jones' direction of travel. <u>See</u> Record

---

[6] As noted in the factual and procedural background section *supra*, Officer Meyers failed to activate his dash camera to support these contentions. <u>See</u> Record Document 16-3, Officer Meyers' Dash Cam at 7:43-8:00, Exhibit A-1. However, Officer Meyers' deposition testimony supports that Jones allegedly stopped at a stop sign for more than a few seconds and had no specific direction of travel. <u>See</u> Record Document 16-3 at p. 54, Officer Meyers' Deposition, Exhibit E.

Document 18-1 at p. 9. Therefore, Jones contends that not only did he not violate a law, he was not involved in any criminal activity, and thus Officer Meyers lacked the requisite reasonable suspicion to perfect a <u>Terry</u> stop. <u>See id.</u>

Furthermore, Jones rebuts the argument advanced by Defendants that Officer Meyers had the requisite reasonable suspicion by pointing out that the "shots fired" 911 call provided no description of the shooter other than that the shooter was on foot, and was not in a vehicle, which allegedly excluded Jones. <u>See</u> Record Document 18-4 at p. 3, 911 Call, Exhibit A-1. However, Defendants argue that Officer Meyers did not know that the shooter was likely on foot as evidenced in his deposition testimony. <u>See</u> Record Document 16-3 at pp. 53-54, Officer Meyers' Deposition, Exhibit E. Nonetheless, the dispatch audio contains a statement from an unidentified officer informing other officers of the facts of the "shots fired" 911 call. The unidentified officer states "Now this subject that was shooting is possibly going to be on foot. When the Complainant called in they didn't see no cars, they did see someone standing on the corner of Holly and East Olive." Record Document 18-4 at p. 3, Dispatch Audio at 5:15-5:25, Exhibit A-2. Defendants further argue that regardless of whether Officer Meyers was advised that the shooter was on foot, it was certainly feasible, and even probable, that a shooter would get into a vehicle and attempt to leave the area before police arrived. <u>See</u> Record Document 19 at p. 1. Therefore, Defendants contend that Officer Meyers had a duty to investigate any and all suspicious activity to protect the citizens in that area from an active shooter. <u>See id.</u> at pp. 1-2.

A reasonable suspicion determination is a question of law to be determined by the court. <u>See</u> <u>Goodson v. City of Corpus Christi</u>, 202 F.3d 730, 739 (5th Cir. 2000). However,

reasonable suspicion shall be determined at trial as a matter of law where there are disputed facts at the summary judgment stage. See id. at 739 ("[T]he district court cannot draw conclusions of law from disputed facts at the summary judgment phase."). In the present action, Jones has submitted competent summary judgment evidence to require a trial as to his unjustified detention claim. At a minimum, the record evidence suggests that Jones did not fit the description of the perpetrator of the "shots fired" 911 call and that Officer Meyers was aware of this at the time he made the investigative stop. For example, Jones was not on foot, but rather was in a vehicle. Defendants' contention that reasonable suspicion was present because of a "shots fired" 911 call, in the area of Jones' vehicle, Jones stopping for a few seconds too long at a stop sign, and Jones' direction of travel being suspicious are the types of sparse and broadly generic information discussed and cautioned against in Jaquez. Therefore, the Court finds that a genuine dispute of material fact exists as to whether Officer Meyers had the requisite reasonable suspicion to perform a Terry stop. Whether Jones' evidence is more credible than Defendants' evidence is a question for the trier of fact. See id. Because of the determination that a genuine dispute of material fact exists as to reasonable suspicion, this Court likewise cannot determine at this stage whether Officer Meyers' actions were objectively reasonable for purposes of a qualified immunity analysis.[7]

---

[7] Defendants contend that even if the Court were to assume *arguendo* that the initial traffic stop was improper, the actions of Jones after he drove away created probable cause for his arrest of reckless operation of vehicle in violation of La. Rev. Stat. § 14:99. However, only if the detention was lawful does the dispute over whether Jones violated La. Rev. Stat. § 14:99 become relevant. See Goodson v. City of Corpus Christi, 202 F.3d 730, 740 (5th Cir. 2000). Additionally, as noted in footnote five, the Court construed Jones' claim for false arrest as an unjustified detention claim. However, if it was Jones' intent to assert claims for both unjustified detention and false arrest, summary judgment would likewise be denied as to the false arrest claim. See id. at 740 ("Therefore, a genuine [dispute] of

This holding is narrow and the Court expresses no opinion on whether Officer Meyers acted in an objectively reasonable manner or whether he will ultimately be entitled to qualified immunity. Rather, this Court simply cannot make such a determination at the summary judgment stage and this claim must proceed to trial.

**B.    Excessive Force**

A plaintiff's claim for excessive force is analyzed under the Fourth Amendment. See Graham v. Connor, 490 U.S. 386, 395, 109 S. Ct. 1865, 1871 (1989). Excessive force claims are separate and distinct from unlawful arrest claims, and the former must be analyzed without regard to whether the arrest itself was justified. See Freeman v. Gore, 483 F.3d 404, 417 (5th Cir. 2007). Therefore, in order to overcome a law enforcement officer's assertion of qualified immunity on a claim for excessive force, the Fifth Circuit applies a three-part test, requiring a plaintiff to show that he suffered "(1) an injury that (2) resulted directly and only from use of a force that was excessive to the need and that (3) the force was objectively unreasonable." Goodson v. City of Corpus Christi, 202 F.3d 730, 740 (5th Cir. 2000).

Defendants claim that Jones' claim for excessive force fails with respect to each element, and thus Officer Meyers is entitled to qualified immunity. See Record Document 16-1 at p. 16.

---

material fact exists on the question of whether [the officers] could have reasonably believed that their detention of Goodson was lawful. Just as that dispute foreclosed summary judgment on the qualified immunity issue for the reasonable suspicion claim, it likewise prevents a summary judgment grant of qualified immunity on the probable cause claim.").

### i.     Element 2

Jones alleges that he has suffered headaches and memory loss since the incident. <u>See</u> Record Document 16-3 at pp. 40, 51, Jones' Deposition, Exhibit D. Jones contends that Officer Meyers' actions directly caused his alleged head trauma. Jones further contends that the alleged head trauma then caused the brain cyst to form, which resulted in his headaches and memory loss. Therefore, Jones concludes Officer Meyers' actions caused his headaches and memory loss.

Jones argues that Dr. Sun's testimony that was discussed in the factual and procedural background section *supra*, creates a genuine dispute of material fact because of Dr. Sun's uncertainty of whether head trauma can cause a brain cyst. <u>See</u> Record Document 18-1 at p. 14. Defendants contend that Jones has failed to offer evidence to show that his alleged headaches and memory problems resulted directly and only from Officer Meyers' actions because there were other potential causes and Jones has failed to provide medical evidence to support his argument. <u>See</u> Record Document 19 at p. 4. To support their argument, Defendants cite to a case within the Southern District of Texas that held at the summary judgment stage that "plaintiff has not presented any medical evidence to support a finding that his various claimed injuries to his jaw, head, back, neck, knees, hands or feet . . . can be directly linked to being struck in the face with a gun as opposed to some other cause." <u>Staten v. Adams</u>, Civil Action No. 4:09-1838, 2014 WL 3891357, at *6 (S.D. Tex. Aug. 6, 2014), <u>aff'd</u>, 615 F. App'x 223 (5th Cir. 2015).

The Court finds both Defendants' argument and <u>Staten</u> persuasive. Jones, as the non-movant, cannot meet his burden of proving that a genuine dispute of material fact exists by providing only "some metaphysical doubt as to the material facts, by conclusory

allegations, by unsubstantiated assertions, or by only a scintilla of evidence." See Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). Dr. Sun's testimony is exactly that, a scintilla of evidence that raises some metaphysical doubt as to the material facts.

Based on the absence of medical opinion evidence, the Court finds that Jones cannot meet his burden of proof on his claim that the alleged brain cyst, headaches and memory loss were more probably than not sustained in this incident. Accordingly, the Court rejects Jones' contention that he has raised a genuine dispute of material fact as to whether Officer Meyers' actions were a direct and only cause of his headaches and memory loss.

### ii.    Element 1

"To state a claim for excessive use of force, the plaintiff's asserted injury must be more than *de minimis*." Freeman v. Gore, 483 F.3d 404, 416 (5th Cir. 2007). "The injury . . . must [also] be evaluated in the context in which the force was deployed." Glenn v. City of Tyler, 242 F.3d 307, 314 (5th Cir.2001). "Injuries which result from, for example, an officer's justified use of force to overcome resistance to arrest do not implicate constitutionally protected interests." Johnson v. Morel, 876 F.2d 477, 480 (5th Cir. 1989), abrogated on other grounds, Harper v. Harris Cty., Tex., 21 F.3d 597 (5th Cir. 1994). Further, minor, incidental injuries that occur in connection with the use of handcuffs to effectuate an arrest do not give rise to a constitutional claim for excessive force. See Freeman, 483 F.3d at 417 (bruising of the wrists and arms due to be placed in handcuffs is a *de minimis* injury).

Jones contends that as a result of the force used by Officer Meyers, he was diagnosed with a conjunctival hemorrhage to the right eye, an unspecified injury of the

head, and an abrasion of an unspecified part of the head. See Record Document 18-4 at p. 12, University Health ER Records, Exhibit E. In his deposition testimony, Jones states that he "received a lot of hickies in the top of my head, which eyes—swelling of my eye, and the jaw was—I guess it come from being on the ground . . . . [A]nd swelling of the eye and had knots in the top of my head." Record Document 16-3 at p. 38, Jones' Deposition, Exhibit D. He further testified that those injuries only took about a week to heal. See id. at p. 39.

Jones has offered no authority demonstrating that "hickies, eye swelling, and a sore jaw" are more than *de minimis* or otherwise rise to the level of an injury sufficient to constitute a constitutional violation. Therefore, the Court finds that Jones has suffered no more than a *de minimis* injury which is insufficient to support a Section 1983 claim. See e.g., Elphage v. Gautreaux, 969 F.Supp.2d 493, 509 (M.D. La. 2013) (minor scrapes and a temporary "ring" around plaintiff's wrist from the handcuffs were *de minimis*); Reaux v. Sibley, No. 09-00407, 2011 WL 2455759 (W.D. La. May 25, 2011) ("scratches and a small knot on the forehead are injuries that are so minor they are *de minimis*"); Golla v. City of Bossier City, 687 F.Supp.2d 645, 660 (W.D. La. 2009) (plaintiff's cuts on his feet were *de minimis*); Carthon v. Prator, No. 08-1238, 2009 WL 3347115 (W.D. La. Oct. 14, 2009) (a scrape on the plaintiff's forehead was insufficient to establish a constitutional violation). Accordingly, Defendants' Motion for Summary Judgment as to Jones' excessive force claim against Officer Meyers is **GRANTED**.

## VI.     Section 1983 Failure to Intervene Claim Against Officer Camp

Several federal circuit courts, including the Fifth Circuit, have concluded that an officer may be liable under Section 1983 when he is present at the scene of a

constitutional violation by another officer and "does not take reasonable measures to protect" a person from the other officer's violation of the person's constitutional rights. Whitley v. Hanna, 726 F.3d 631, 646 (5th Cir. 2013); see also Hale v. Townley, 45 F.3d 914 (5th Cir. 1995). This theory of liability against officers "most often applies in the context of excessive force claims, [but] other constitutional violations also may support a theory of bystander liability." Id. at 646 n.11.

Generally, to prevail on a failure to intervene/bystander liability claim against an officer, the plaintiff must prove that the defendant officer (1) knows that a fellow officer is violating an individual's constitutional rights; (2) is present at the scene of the constitutional violation; (3) has a reasonable opportunity to prevent the harm; and (4) chooses not to act. See id. at 646. When the alleged constitutional violation by the other officer is excessive force, important considerations in deciding whether these elements are met are whether the defendant officer (1) observed the use of the alleged excessive force or (2) had sufficient time to prevent the use of excessive force. See Tufaro v. City of New Orleans, 2004 WL 1920937 at *4 n. 20, 2004 U.S. Dist. LEXIS 17146 at *12 n.20 (E.D. La. 2004) (citing Lanigan v. Vill. of E. Hazel Crest, 110 F.3d 467, 477 (7th Cir. 1997)).

In the present action, the dash cam footage clearly shows that Officer Camp was not in view of Officer Meyers and Jones when Officer Meyers both kneed Jones and struck him in the kidney area three times. See Record Document 16-3, Officer Meyers' Dash Cam at 12:30-12:37, Exhibit A-1. Furthermore, Officer Camp, in his deposition, testified that he did not see Officer Meyers strike Jones three to four times in the facial area. See Record Document 16-3 at p. 64, Officer Camp's Deposition, Exhibit F. Actions of this

nature happen rather quickly and Officer Camp was preoccupied with trying to assist in detaining Jones. Furthermore, even assuming *arguendo* that Jones offered competent summary judgment evidence to support a failure to intervene claim, the Court finds Officer Camp's actions were objectively reasonable under the circumstances because he was focused on ensuring Jones was handcuffed as evidenced from the dash cam footage of Officer Camp placing his body on Jones' legs and assisting Officer Meyers in pulling Jones' arms behind his back. <u>See</u> Officer Meyers' Dash Cam at 12:39-13:50.

Accordingly, Jones has failed to present the Court with evidence that would raise a genuine dispute of material fact as to whether Officer Camp observed the alleged excessive force or whether Officer Camp has sufficient time to prevent the alleged excessive force. Therefore, Officer Camp is entitled to qualified immunity because Jones has failed to offer evidence showing that Officer Camp violated Jones' constitutional rights and that in violating his constitutional rights the actions of Officer Camp were unreasonable. Jones' failure to intervene claim against Officer Camp fails as a matter of law, and thus Defendants' Motion for Summary Judgment is **GRANTED** as to this claim and **DISMISSED WITH PREJUDICE.**

## VII.   Section 1983 Claim Against the City of Shreveport

Jones contends that the City has failed to adequately train and supervise its officers. <u>See</u> Record Document 18-1 at p. 17. Jones argues that there is not an express policy in place rather an implied policy of allowing officer to act unreasonably and unconstitutionally, resulting in extensive physical, mental, and emotional harm. <u>See id.</u>

It is well-established that a municipality cannot be held vicariously liable for the isolated unconstitutional actions of its employees. <u>Monell v. Dept. of Soc. Servs. of City</u>

of New York, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037 (1978); Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 1995). Rather, in order to hold a municipality liable under Section 1983, a plaintiff must identify: (1) an official policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy or custom. Monell, 436 U.S. at 694, 98 S. Ct. at 2037. For claims of failure to train or supervise, the plaintiff must show that the failure constituted "deliberate indifference" to his constitutional rights. See Sanders-Burns v. City of Plano, 578 F.3d 279, 290 (5th Cir. 2009).

Deliberate indifference is a stringent standard of fault requiring a showing or "more than negligence or even gross negligence." Poole v. City of Shreveport, 691 F.3d 624, 634 (5th Cir. 2012) (quoting Estate of Davis ex rel McCully v. City of N. Richland Hills, 406 F.3d 375, 381 (5th Cir. 2005)). It will not "suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular-injury causing conduct." City of Canton, Ohio v. Harris, 489 U.S. 378, 391, 109 S. Ct. 1197, 1206 (1989). "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality" can the City be held liable for such failure under Section 1983. Id. at 389, 109 S. Ct. at 1205; see also Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown, 520 U.S. 397, 410, 117 S. Ct. 1382, 1391 (1997) ("deliberate indifference" requires proof "that a municipal actor disregarded a known or obvious consequence of his action").

In the present action, Jones has failed to offer evidence that would raise a genuine dispute of material fact as to whether the City had an official policy or custom that caused Jones alleged 4th Amendment deprivations. Further, Jones has not provided evidence

that any official acted with deliberate indifference. In fact, all Defendant officers are certified by the Louisiana Peace Officer Standards and Training Council ("P.O.S.T."). <u>See</u> Record Document 16-3 at p. 3, ¶ 2, Officer Meyers' Affidavit, Exhibit A. P.O.S.T. mandates 360 course hours and firearms qualifications, including training on reasonable use of force. <u>See id.</u> The SPD also requires that its officers undergo additional training during the academy and annual retraining. <u>See Id.</u> Moreover, Jones' opposition cites absolutely no case law to support its <u>Monell</u> claim. Therefore, Jones' failure to train and supervise claim against the City under <u>Monell</u> fails as a matter of law. Thus Defendants' Motion for Summary Judgment is **GRANTED** as to this claim and **DISMISSED WITH PREJUDICE.**

VIII.    **State Law Claims Against Defendants**

Jones asserts state law claims against Officer Meyers for excessive force, assault, battery, false arrest, and false imprisonment. Jones asserts state law claims against Officer Camp for assault, battery, false arrest, and false imprisonment. Jones asserts state law claims against the City for excessive force, negligent hiring, training, and/or supervision, assault, battery, false arrest, and false imprisonment. The Court will now analyze the claims asserted against each Defendant separately.

A.    **State Law Claims Against Office Meyers**

Jones has asserted state law claims of excessive force, assault, battery, false arrest, and false imprisonment against Officer Meyers arising out of the same allegations as discussed above. It is well settled that Louisiana employs the same standards in analyzing claims of excessive force as federal law, namely, whether the officer's actions were "reasonable" under the circumstances. <u>See</u> <u>Reneau of City of New Orleans</u>, No. 03-

1410, 2004 WL 1497711, *4 (E.D. La. July 2, 2004) (citing <u>Kyle v. City of New Orleans</u>, 353 So.2d 969, 973 (La. 1977)); <u>Mathieu v. Imperial Toy Corp.</u>, 94-0952 (La. 11/30/1994), 646 So.2d 318, 323. Therefore, because the Court granted Defendants' Motion for Summary Judgment as to Jones' Section 1983 excessive force claim, Defendants' Motion for Summary Judgment is also **GRANTED** as to Jones' state law excessive force claim.

Furthermore, assault and battery claims under Louisiana law involve similar elements to excessive force claims. <u>See</u> <u>Penn v. St. Tammany Parish Sheriff's Office</u>, 843 So.2d 1157, 1161 (La. Ct. App. 1st Cir. 04/02/2003) (excessive force elements); <u>Caudle v. Betts</u>, 512 So.2d 389 (La. 09/09/1987) (assault and battery elements). Because these claims are similar to the excessive force claim, Defendants' Motion for Summary Judgment as to Jones' assault and battery claims against Officer Meyers are **GRANTED**.

Lastly, Jones has asserted state law false arrest and false imprisonment claims[8] against Officer Meyers, the Court finds that for the same reasons as discussed in Section V, A, *supra*, a genuine dispute of material fact exists on whether Officer Meyers had reasonable suspicion to perfect a <u>Terry</u> stop. However, though whether there was a violation of state law and whether there was a violation of the Fourth Amendment are two separate questions. <u>See</u> <u>Virginia v. Moore</u>, 553 U.S. 164, 174-75, 128 S. Ct. 1598, 1606 (2008). Nonetheless, Louisiana's qualified immunity standards are the same as those under federal law. "Louisiana applies qualified immunity principles to state constitutional

---

[8] The Court will treat Jones' false arrest and false imprisonment claims similarly because the elements required for proof of these claims are similar. <u>See</u> <u>Kyle v. City of New Orleans</u>, 353 So.2d 969, 971 (La. 12/19/1977) ("false arrest and imprisonment occur when one arrests and restrains another against his will without a warrant or other statutory authority"); <u>Anderson v. Wal–Mart Stores</u>, 675 So.2d 1184, 1186 (La. App. 5 Cir. 05/15/1996) (discussing false imprisonment under Louisiana law).

law claims based on 'the same factors that compelled the United States Supreme Court to recognize a qualified good faith immunity for state officers under § 1983'." Roberts v. City of Shreveport, 397 F.3d 287, 296 (5th Cir. 2005) (quoting Moresi v. State, 567 So.2d 1081, 1093 (La. 09/06/1990)); see also Knapper v. Connick, 681 So.2d 944, 946–51 (La. 10/15/1996) (applying federal absolute immunity rules to a state law claim against a prosecutor). Thus, the question for the Court is whether Officer Meyers arguably had reasonable suspicion under state law to stop Jones; if so, qualified immunity protects him from suit under state law for false arrest or false imprisonment. Therefore, Defendants' Motion for Summary Judgment as to Jones' state law false arrest and false imprisonment claims against Officer Meyers is **DENIED**.

### B.    State Law Claims Against Officer Camp

Jones has also asserted state law claims of assault, battery, false imprisonment, and false arrest against Officer Camp arising out of the same allegations as discussed above. First, Jones has failed to provide the Court with any evidence that would support these claims against Officer Camp. Furthermore, because the Court found that Jones' claim for failure to intervene against Officer Camp failed as a matter of law, and thus he was entitled to qualified immunity, Defendants' Motion for Summary Judgment on Jones' state law claims against Officer Camp is **GRANTED** and those claims are hereby **DISMISSED WITH PREJUDICE**.

### C.    State Law Claims Against the City

Defendants seek summary judgment on Jones' negligent hiring, training, and/or supervision claim against the City. See Record Document 16-1 at p. 25. The elements of a negligent hiring, training, and/or supervision claim under Louisiana law, as with any

negligence claim in Louisiana, are: (1) the defendant had a duty to conform its conduct to a specific standard; (2) the defendant failed to conform its conduct to that standard; (3) the defendant's substandard conduct was a cause in fact of the plaintiff's injuries; (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (in other words, the plaintiff and the plaintiff's injuries were within the scope of the defendant's duty); and (5) the plaintiff suffered damages. See Roberts v. Benoit, 605 So.2d 1032, 1040–46 (La. 09/09/1991).

The "deliberate indifference" standard for a Monell claim is a more exacting standard than a negligence standard. See Sanders-Burns v. City Of Plano, 594 F.3d 366, 381 (5th Cir. 2010). However, the Court's analysis of Jones' Monell claim in Section VII, *supra*, is nonetheless relevant to the discussion of his negligent hiring, training, and/or supervision claims.

The summary judgment evidence shows that the City provides its officers with extensive training in the proper use of force, both at the police academy and through annual retraining. See Record Document 16-3 at p. 3, Officer Meyers' Affidavit, Exhibit A. Jones has failed to provide the Court with any evidence or case law to support his negligent hiring, training, and/or supervision claim against the City. Accordingly, Defendants' Motion for Summary Judgment on Jones' state law claim of negligent hiring, training, and/or supervision against the City is **GRANTED** and **DISMISSED WITH PREJUDICE**.

Furthermore, Jones pleads Louisiana state law claims of excessive force, assault, battery, false imprisonment, and false arrest against the City under the doctrine of *respondeat superior*. A doctrine more commonly referred to as vicarious liability, codified

in La. Civ. Code art. 2320. Article 2320 states, "Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed." "Under Louisiana law, an employer is liable for the tortious acts of an employee if the employee's actions were within the course and scope of his employment." Roberts v. City of Shreveport, Civil Action No. 05-31135, 2007 WL 486768 at *1 (W.D. La. Feb. 9, 2007) (citing LeBrane v. Lewis, 292 So.2d 216, 217-18 (La. 1974)).

In the present action, Officer Meyers and Camp were employees of the City, and thus the City can be held liable for their tortious actions that were within the course and scope of their employment. See Roberts, 2007 WL 486768 at *1. Because the Court **GRANTED** Defendants' Motion for Summary Judgment as to the excessive force, assault, and battery claims against Officer Meyers, the Court also **GRANTS** Defendants' Motion for Summary Judgment as to these claims against the City. Because the Court **DENIED** Defendants' Motion for Summary Judgment as to Jones' false arrest and false imprisonment claims levied against Officer Meyers, the Court must also **DENY** Defendants' Motion for Summary Judgment as to these claims against the City.

Moreover, because the Court found that Officer Camp did not commit any tortious actions, the Court **GRANTS** Defendants' Motion for Summary Judgment as to holding the City liable for Officer Camp's actions and those claims are hereby **DISMISSED WITH PREJUDICE**.

**CONCLUSION**

Defendants' Motion for Summary Judgment (Record Document 16) is hereby **GRANTED IN PART AND DENIED IN PART**. Thus, the final disposition of Jones' claims in the instant Memorandum Ruling is as follows:

1) All Section 1983 official capacity claims against Officer Meyers and Camp are **DISMISSED WITH PREJUDICE**;

2) The Section 1983 unjustified detention claim and any Section 1983 false arrest claim against Officer Meyers remain;

3) The Section 1983 excessive force claim against Officer Meyers is **DISMISSED WITH PREJUDICE**;

4) The Section 1983 failure to intervene claim against Officer Camp is **DISMISSED WITH PREJUDICE**;

5) The Section 1983 Monell claim against the City is **DISMISSED WITH PREJUDICE**;

6) Jones' state law claims for false arrest and false imprisonment against Officer Meyers and the City based on Officer Meyers' action survive summary judgment;

7) Jones' state law claims for assault, battery, false arrest, and false imprisonment against Officer Camp and against the City based on Officer Camp's actions are **DISMISSED WITH PREJUDICE**;

8) Jones' state law claims for assault and battery against Officer Meyers and against the City based on Officer Meyers' actions are **DISMISSED WITH PREJUDICE**; and

9) Jones' state law claim of negligent hiring, training, and/or supervision claim against the City is **DISMISSED WITH PREJUDICE**.

An order consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, on this the 24th day of August, 2018.

S. MAURICE HICKS, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT